UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CARLOS GUZMAN and MANUEL DE JESUS VASQUEZ,
individually and on behalf of all others similarly situated,

Case No: 22-cv-4651

Plaintiffs,

-against-

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

BACTOLAC PHARMACEUTICAL, INC., CHOICE LONG
ISLAND, INC., STEVEN KLEIN, and HAROLD ROBBINS,

Defendants.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      Plaintiffs Carlos Guzman ("Guzman") and Manuel De Jesus Vasquez

("Vasquez"), and all individuals similarly situated, bring this action against Bactolac

Pharmaceutical, Inc. ("Bactolac"), Choice Long Island, Inc. ("Choice"), Steven Klein ("Klein")

and Harold Robbins ("Robbins") under the Fair Labor Standards Act ("FLSA"), the New York

Labor Law ("NYLL"), and the Miscellaneous Wage Order (12 NYCRR § 142) for (1) overtime,

(2) delayed overtime, (3) delayed wages, (4) spread of hours pay, (5) wage statement violations

and (6) hiring notice violations.  Vasquez also brings this action for unlawful retaliation under

the FLSA and the NYLL.

## JURISDICTION AND VENUE

2.      Jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331, 28

U.S.C. § 1337, and 29 U.S.C. § 201, et seq. since, inter alia, claims for relief predicated upon the

Fair Labor Standards Act ("FLSA") arise under federal law.

1

3.      Pursuant to 28 U.S.C. § 1367, the doctrine of supplemental jurisdiction, the Court maintains jurisdiction over the balance of Plaintiffs' and the putative members of the classes' claims.

4.      Pursuant to 28 U.S.C. § 1391, the claims set forth herein are properly brought forth in the United States District Court for the Eastern District of New York since, inter alia, the events and omissions giving rise to Plaintiffs' and the members of the putative classes and collectives' claims occurred in the Eastern District and as Defendants are residents of the Eastern District.

## PROCEDURAL HISTORY AND TOLLING

5.      On February 9, 2021 Plaintiffs commenced an action in the Supreme Court of the State of New York, County of Suffolk *sub nom Guzman v. Bactolac Pharmaceutical, Inc.,* Index No. 60227/2021 (the "State Action") for various violations of the New York Labor Law and the Minimum Wage Order for Miscellaneous Industries and Occupations.

6.      On March 3, 2021, Plaintiffs amended their complaint in the State Action as a matter of right to include claims under the FLSA. [1]

7.      On June 30, 2021, the Plaintiffs moved by order to show cause to dismiss the State Action without prejudice in order to proceed in federal court. The defendants opposed that motion.

8.      On July 19, 2022, the Supreme Court, Suffolk County (Baisley, J.) granted Plaintiffs' motion and dismissed the State Action without prejudice "so that the plaintiffs may proceed in federal court." [2]

---

[1] A copy of the First Amended Complaint in the State Action is annexed hereto as Exhibit 1.
[2] A copy of the Order of Dismissal is annexed hereto as Exhibit 2.

9.      The Statute of Limitations was tolled by operation of CPLR Section 205 as of the date of commencement of the State Action, February 9, 2021.[3]

10.     The Statute of Limitations was further tolled for an additional 228 days by operation of the executive orders issued by the Governor of the State of New York.[4]

11.     All claims arising under state law on or after June 26, 2014 are timely.

12.     Plaintiffs' federal claims arise out of willful violations of the FLSA. More specifically, Bactolac flagrantly violated its recordkeeping and overtime obligations by paying overtime wages "off the books" in cash.[5] Therefore a 3 year statute of limitations applies.

13.     All claims arising under the FLSA on or after February 9, 2018 are timely.

14.     The specific period covered by this complaint need not be addressed by this Court at the pleadings state, and the statute of limitations may be asserted as an affirmative defense by the defendants.[6]

---

[3]

    "[D]ismissals, without prejudice, evince an intent on the part of the trial judge 'to preserve whatever right plaintiff had to pursue his remedy further[,'] thus cloaking the claims under the protection of [CPLR] Section 205." *Copeland v. Rosen*, 208 F.R.D. 507, 514 (S.D.N.Y. 2002), citing *Izquierdo v. Cities Service Oil Co.*, 47 Misc. 2d 1087, 264 N.Y.S.2d 58, 62 (N.Y. Sup. Ct. 1965) (holding that previous dismissal by federal court without prejudice based on plaintiff's failure to comply with discovery orders allowed protection of [CPLR] Section 205 for subsequent filing in state court) and *Dyer v. Cahan*, 150 A.D.2d 172, 540 N.Y.S.2d 785, 786 (1st Dep't 1989) (where prior wrongful death action was dismissed without prejudice for lack of diversity jurisdiction, neglect to prosecute, and failure to comply with scheduling order, extension available "in light of broad purpose for which CPLR 205(a) was intended . . .").

*In re HSBC Bank, USA, N.A.*, 14 F. Supp. 3d 99, 106 (E.D.N.Y. 2014).

[4] On March 20, 2020, Governor Cuomo issued Executive Order No. 202.8 (9 NYCRR 8.202.8), which "tolled" the statute of limitations for commencing any action arising under "any [. . .] statute, local law, ordinance, order, rule, or regulation" until April 19, 2020. The Governor "later issued a series of nine subsequent executive orders that extended the suspension or tolling period, eventually through November 3, 2020." *Brash v. Richards*, 195 A.D.3d 582, 583-84 (2d Dep't 2021)(citing 9 NYCRR §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72).
[5] *See Moon v. Kwon*, 248 F. Supp. 2d 201, 231 (S.D.N.Y. 2002) (finding FLSA violation willful where defendants "flagrantly violated basic recordkeeping requirements and knowingly paid employees off-the-books in cash").

## THE PARTIES

15.     Plaintiff Guzman is a natural person and a resident of the State of New York, County of Suffolk.

16.     Plaintiff Vasquez is a natural person and a resident of the State of New York, County of Suffolk.

17.     Defendant Bactolac is a Delaware corporation licensed to do business in the State of New York.

18.     Defendant Bactolac is a dietary supplement manufacturer with manufacturing facilities in at least two locations – 7 Oser Avenue, Hauppauge, New York and 620 Old Willets Path, Hauppauge, New York.

19.     Defendant Bactolac's principal place of business is located at 7 Oser Avenue, Hauppauge, New York.

20.     Defendant Choice is a Delaware corporation licensed to do business in the State of New York.

21.     Defendant Choice is a staffing agency with offices at 720 Veterans Memorial Highway, Hauppauge, New York 11788.

22.     Defendant Choice's principal place of business is located at 720 Veterans Memorial Highway, Hauppauge, New York 11788.

---

[6] Dismissal of a claim at the pleading stage based on a statute of limitations affirmative defense is "appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016) (quoting *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010)); *see also Cooper Crouse-Hinds, LLC*, 2018 U.S. Dist. LEXIS 22100, 2018 WL 840056, at *4 ("[A] complaint may be dismissed under Federal Rule of Procedure 12(b)(6) as barred by a statute of limitations where the complaint clearly shows that the plaintiff's claim is barred.") (citing *Messeroux v. Maimonides Med. Ctr.*, No. 11-CV-05343, 2013 U.S. Dist. LEXIS 77244, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013)).

4

## FACTUAL ALLEGATIONS

*Carlos Guzman*

23.     On or about January 7, 2019, Plaintiff Guzman sought employment at the main offices of Bactolac located at 7 Oser Avenue, Hauppauge, New York 11788.

24.     Upon arriving at 7 Oser Avenue, Guzman met with Ramesh LNU ("Ramesh"), a manager employed by Bactolac.

25.     At the meeting with Ramesh, Guzman expressed his interest in employment with Bactolac.

26.     Ramesh agreed to hire Plaintiff Guzman.

27.     Bactolac exercised the authority to hire Guzman. Ramesh hand-wrote a note containing Guzman's regular hourly rate of pay ($12 per hour), Guzman's work schedule, and the date on which Plaintiff Guzman was to begin working at Bactolac. Ramesh wrote his name on the note and signed the note and gave it to Guzman. Ramesh gave Guzman the address of Choice and instructed him to report to Choice. Guzman went to Choice and furnished the note provided by Ramesh. Choice hired Guzman to work at Bactolac as instructed by Ramesh.

28.     Bactolac determined Guzman's regular rate of pay. The note furnished by Ramesh instructed Choice to hire Guzman at $12 per hour, and Guzman was actually paid by Choice at a rate of $12 per hour.

29.     Plaintiff Guzman worked at Bactolac's manufacturing facility located at 620 Old Willets Path in Hauppauge, New York.

30.     Guzman was jointly employed by Bactolac and Choice from approximately January 7, 2019, until approximately April 2019.

31.     Guzman's duties included filling a hopper with whey protein powder.

32.    Guzman was a manual worker who spent more than 25% of his workday performing physical tasks.

33.    Bactolac determined Guzman's work schedule. Bactolac supervisors determined that Plaintiff Guzman's regular work schedule would be from 7 am to 5 pm Monday through Friday, and Saturday from 7 am to 3 or 4 pm with a ½ hour lunch break each day (55 hours/week).

34.    Bactolac kept records of the hours worked by Guzman. There was a book kept by Bactolac which showed the hours worked by Guzman every week. Guzman signed the record of hours worked each week. At the end of each workweek Bactolac kept the record of hours worked by Guzman and used the record to determine the cash overtime wages paid to Guzman.

35.    Bactolac supervised the Plaintiff. Managers and supervisors employed by Bactolac, including Ramesh, "Prasan" LNU and "Vira" LNU, supervised Guzman on a daily basis.

36.    Guzman was paid for all regular (non-overtime) hours by Choice via a weekly payroll check.

37.    Guzman was paid $12.00 per hour by Choice.

38.    After his first full week of work, Guzman received a Choice paycheck for only 40 hours, despite the fact that he had worked at least 55 hours that workweek.

39.    Guzman approached Vira and asked why he had not been paid for all hours worked. Vira responded that Bactolac would pay him in cash for his overtime hours.

40.    Bactolac did not pay Guzman his overtime on the regular payday for the period in which such workweek ended.

41.     Bactolac paid overtime wages to Guzman in cash, on a *biweekly* basis. Every other week an employee of Bactolac would visit Bactolac's production facility at 620 Old Willets Path in Hauppauge, New York with a cash box. The Bactolac employee with the cash box would sit at a desk in an office adjacent to Vira's office. Guzman reported to the office every other week to receive cash for the payment of overtime wage.

42.     Bactolac determined the rate of pay for overtime hours worked by Guzman. Bactolac paid Guzman for overtime hours at a flat rate of $10 per hour, in cash.

43.     Bactolac kept a record of the cash wages paid to Guzman. Bactolac required Guzman to sign a book which showed the amount of cash wages paid. The book containing the record of cash wages was kept by Bactolac.

44.     At the time Guzman received his first payment for overtime wages from Bactolac, he realized that Bactolac was only paying him for his overtime hours at a rate of $10 per hour.

45.     Guzman approached Vira, asking why he was paid $10 per hour for overtime. Vira told him to ask Prasan. Guzman asked Prasan why he was paid $10 per hour for overtime. Prasan told him to ask Ramesh. Guzman asked Ramesh why he was paid $10 per hour for overtime. Ramesh responded with words to the effect: "That is what *we* pay. If you don't like it, there's the door."

46.     The spread of hours worked by Guzman exceeded 10 approximately 5 days each week.  More specifically, Guzman arrived for work several minutes before 7 am and/or remained at work several minutes after 5 pm each workday from Monday to Friday.

47.     The Defendants did not pay spread of hours pay to Guzman as required by 12 NYCRR § 142-2.4.

48.     Bactolac did not furnish a wage statement with the cash wages paid.

49.     The wage statements furnished by Choice were defective because:

>    a.   they did not include the cash payment of overtime wages; and
>
>    b.   they did not contain the telephone number of the employer, as required by Labor Law § 195(3).

50.     Bactolac never furnished Guzman with the notice required by Labor Law § 195(1).

51.     Choice never furnished Guzman the notice required by Labor Law § 195(1).

52.     In approximately April 2019 Bactolac exercised the authority to fire Guzman. Ramesh told Guzman that he could no longer work for Bactolac because his work was not satisfactory.

### *Manuel DeJesus Vasquez*

53.     Manuel DeJesus Vasquez was hired by Bactolac more than 10 years ago.

54.     Approximately 6 years ago, Bactolac laid off Plaintiff Vasquez.

55.     Approximately one month after the layoff, Ramesh called Vasquez and offered him employment. Ramesh told Vasquez to report to Choice and tell them that Ramesh sent him. As instructed by Ramesh, Vasquez reported to Choice and was hired.

56.     Plaintiff Vasquez has been jointly employed for approximately 6 years by Bactolac and Choice.

57.     Plaintiff Vasquez has worked at Bactolac's manufacturing facility located at 620 Old Willets Path in Hauppauge, New York.

58.     Plaintiff Vasquez's duties include cleaning the floors and the bathrooms.

59.     Bactolac determined the hours worked by Vasquez. Bactolac informed Vasquez that his regular work schedule would be from 8:00 am to 6 pm Monday through Friday, and Saturday from 8:00 am to 3 pm with a ½ hour lunch break each day (54 hours/week).

60.     Bactolac determined the hours worked by Vasquez.

61.     Upon information and belief, Plaintiff Vazquez worked overtime hours on each and every workweek until approximately February 2021.

62.     Plaintiff Vasquez has been paid for all regular (non-overtime) hours by Choice via a weekly payroll check.

63.     Vasquez has been paid $14.50 per hour by Choice.

64.     Vasquez was paid for overtime hours by Bactolac at a flat rate of $10 per hour, in cash.

65.     Bactolac kept records of the hours worked by Vasquez. Each week Vasquez was required to sign an attendance sheet showing the hours he worked. That attendance sheet was kept by Bactolac and used by Bactolac to determine the amount of overtime cash wages paid to Vasquez.

66.     Bactolac did not pay Vazquez his overtime on the regular payday for the period in which such workweek ended.

67.     Bactolac paid overtime wages to Vasquez in cash on a *biweekly* basis. A Bactolac employee who normally worked at Bactolac's corporate headquarters at 7 Oser Avenue in Hauppauge visited the production facility located at 620 Old Willets Path in Hauppauge, New York with a cash box. The Bactolac employee with the cash box would sit in an office adjacent to the supervisor, Vira.

68.     Bactolac kept records of the cash wages paid to Vasquez. The Bactolac employee that paid Vasquez his overtime, in cash, required Vasquez to sign a book showing the amount of cash wages paid to Vasquez. That book was kept by Bactolac.

69.     Bactolac supervised Vasquez. Managers and Supervisors employed by Bactolac, including Ramesh, "Chatania" LNU, and "Checker" LNU supervised the Plaintiff on a daily basis.

70.     The spread of hours worked by Vasquez exceeded 10 approximately 5 days each week.  More specifically, Vasquez arrived for work several minutes before 6 am and/or remained at work several minutes after 6 pm each workday from Monday to Friday.

71.     The Defendants did not pay spread of hours pay to Vasquez as required by 12 NYCRR § 142-2.4.

72.     In February 2021, after becoming aware of Vasquez's overtime claims, Ramesh approached Vasquez and repeatedly demanded to see his passport.

73.     In February 2021, after learning of Vasquez's claims, a representative of Choice visited Bactolac.  He met with Ramesh.  The Choice representative likewise asked Vasquez for his passport.  Choice was advised by Plaintiff's counsel that in light of the pending litigation, any request for documents should be addressed to counsel.  Thereafter, Choice never requested any documents from Plaintiff's counsel.

74.     In February 2021, after becoming aware of Vasquez's overtime claims, Ramesh advised him that he would no longer be permitted to work overtime hours.

75.     Bactolac never furnished Vasquez with a statement for the cash payment of overtime wages.

76.     The wage statements furnished by Choice are defective because:

      c.   they do not include the cash payment of overtime wages; and

      d.   They do not contain the telephone number of the employer, as required by Labor Law § 195(3).

77.     Bactolac never furnished Vasquez with the notice required by Labor Law § 195(1).

78.     Choice never furnished Vasquez the notice required by Labor Law § 195(1).

### *Defendant Steven Klein*

79.     Defendant Klein is one of the founders of Choice.

80.     Upon information and belief, Defendant Klein is an officer of Choice.

81.     Upon information and belief, Defendant Klein was a shareholder of Choice Long Island, Inc.

82.     Upon information and belief, Defendant Klein exercised sufficient operational control over Choice to be deemed Plaintiffs' employer.

### *Defendant Harold Robbins*

83.     Defendant Robbins is one of the founders of Choice.

84.     Upon information and belief, Defendant Robbins is an officer of Choice.

85.     Upon information and belief, Defendant Robbins was a shareholder of Choice Long Island, Inc.

86.     Upon information and belief, Defendant Robbins exercised sufficient operational control over Choice to be deemed Plaintiffs' employer.

## COLLECTIVE ACTION ALLEGATIONS

*87.* Plaintiffs Guzman and Vasquez bring Count I (FLSA Overtime) against all Defendants on behalf of *all non-exempt employees of Choice who were assigned to work at Bactolac* (the "Collective:)*.*

88. Plaintiffs and the Collective worked substantial overtime hours for which they were not compensated at a rate of one-and-one-half times their regular rate of pay.

89. Plaintiffs and the Collective were not paid their overtime compensation on the regular payday for the period in which such workweek ended. Instead, they were paid overtime on a *biweekly* basis.

90. Notice of this action should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who, in violation of the FLSA, have been denied pay at the rate of one- and one-half times their regular rate of pay for their overtime hours worked, and have not been promptly paid overtime owed. Said employees would benefit from a Court supervised notice of the lawsuit and the opportunity to join the case. Those similarly situated employees are known to the Defendants and are readily identifiable through the Defendants' records.

## CLASS ACTION ALLEGATIONS

91. Plaintiffs Guzman and Vasquez bring Counts II (NYLL Overtime), III (Delayed Wages), IV (Spread of Hours Pay), V (Wage Statement Violations), and VI (Hiring Notice Violations) on behalf of *all non-exempt employees of Choice who were assigned to work at Bactolac* (the "Class")

92. Defendants jointly employed the Class.

93.     Defendants did not pay the Class for overtime hours worked at the rate of one-and one-half times their regular rate of pay.

94.     The members of the Class were manual workers.

95.     Defendants did not pay overtime wages to the Class weekly as required by NYLL § 191.

96.     Defendants did not pay overtime wages to the Class within seven calendar days after the end of the week in which the wages were earned as required by NYLL § 191.

97.     Defendants did not pay spread of hours pay to members of the Class for each day in which the employee worked a spread of hours in excess of 10 as required by 12 NYCRR § 142-2.4.

98.     Defendants did not furnish wage statements with the cash payment of overtime to the Class as required by NYLL § 195(3).

99.     The wage statements furnished by Choice to the Class did not comply with the requirements of NYLL § 195(3) inasmuch as said wage statements did not contain the telephone number of the employer.

100.    Defendants did not furnish a hiring notice to the Class as required by NYLL § 195(1).

101.    The members of the Class are so numerous that joinder of all members is impracticable. The class is comprised of at least 100 individuals. The precise number of members of the Class is known to the Defendants.

102.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting members of the Class individually, namely: (1) whether the Class was paid for their overtime hours worked at one and one half times the regular rate of pay; (2)

whether the Class received overtime wages weekly and in a timely fashion as required by NYLL § 191; (3) whether the Class received spread of hours pay as required by 12 NYCRR § 142-2.4; (4) whether the Class received wage statements for the cash payment of overtime wages; (5) whether the Class received wage statements that contained all of the information required by NYLL § 195(3); (6) whether the Class received hiring notices as required by NYLL § 195(1); and (7) the damages to which members of the Class are entitled due to the Defendants' violations of the NYLL.

103.    Plaintiffs' claims are typical of the claims of the Class they seek to represent.

104.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the Class to represent their interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the litigation and its possible settlement, they must not favor their own interests over the Class's interest. Plaintiffs recognize that any resolution of a class action must be in the best interest of the Class. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial.

105.    Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.

106.    There is no conflict between Plaintiffs and the members of the Class.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Class have been damaged and are entitled to

recovery as a result of Defendants' violations of the NYLL. Although the relative damages suffered by the individual members of the Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual members of the Class lack the financial resources to vigorously prosecute individual lawsuits against Defendants to recover, inter alia, unpaid overtime wages, liquidated damages, statutory damages, interest, and attorneys' fees. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

108.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) as the questions of law and fact common to the members of the Class predominate over any other questions affecting only individual members, and as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

109.    This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) in that prosecuting separate actions by individual members of the Class would create a risk of adjudications with respect to the individual members of the Class that may establish incompatible standards of conduct for the parties opposing the Class and/or that, as a practical matter, would be dispositive of the interests of the other members of the Class not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## **COUNT I**

OVERTIME AND DELAYED-PAYMENT OF OVERTIME UNDER THE FLSA

110.    Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

111.    The FLSA is applicable to Defendants as, inter alia, there is enterprise coverage in that, upon information and belief, each of the Defendants do business in excess of $500,000 a year.

112.    Plaintiffs and the members of the Collective were employed by Defendants, individually and/or jointly, within the meaning of the FLSA.

113.    Plaintiffs and the members of the Collective were entitled to overtime pursuant to the FLSA (29 U.S.C. 201 et seq.).

114.    Plaintiffs and the member of the Collective were entitled to receive their overtime compensation on the regular payday for the period in which such workweek ended.

115.    As set forth above, Plaintiffs and the members of the Collective were not paid for the overtime hours they worked at one- and one-half times their regular rate as required by the FLSA, and were not receive their overtime compensation on the regular payday for the period in which such workweek ended.

## COUNT II

### OVERTIME UNDER 12 NYCRR § 142-2.2

116.    Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

117.    The Labor Law is applicable to Defendants.

118.    The Miscellaneous Industry Wage Order is applicable to Defendants.

119.    Plaintiffs and the members of the Class were employed by Defendants, individually and jointly, within the meaning of the Labor Law.

120.    Plaintiffs and the members of the Class were entitled to overtime pursuant to the Labor Law and the Miscellaneous Industry Wage Order.

16

121.    As set forth above, Plaintiffs and the members of the Class were not paid for the overtime hours they worked at one- and one-half times their regular rate.

## COUNT III

### DELAYED PAYMENT OF WAGES UNDER NYLL § 191

122.    Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

123.    Plaintiffs and the members of the class were manual workers under Article 6 of the NYLL.

124.    As set forth above, Plaintiffs and the members of the Class were not paid overtime wages on a weekly basis as required by Article 6 of the NYLL.

125.    As set for the above, Plaintiffs and the members of the Class were not paid all overtime wages within 7 days after the end of the workweek in which such wages were earned as required by Article 6 of the NYLL.

## COUNT IV

### SPREAD OF HOURS PAY (12 NYCRR § 142-2.4)

126.    Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

127.    Plaintiffs and the members of the Class worked a spread of hours in excess of 10.

128.    As set forth above, Plaintiffs and the members of the Class were not paid spread of hours pay as required by 12 NYCRR § 142-2.4.

## COUNT V

FAILURE TO FURNISH WAGE STATEMENTS AS REQUIRED BY NYLL § 195(3)

129.     Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

130.     Pursuant to Labor Law § 195(3), Defendants were obligated to provide Plaintiffs and the Class a statement with every payment of wages listing, inter alia, the following: the dates of work covered by that payment of wages, name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

131.      Defendants failed to provide Plaintiffs and the Class statements with the cash payment of overtime wages.

132.     The wage statements furnished by Choice were defective because:

133.     they did not include the cash payment of overtime wages.

134.     they did not contain the employer's telephone number.

## COUNT VI

FAILURE TO FURNISH HIRING NOTICES AS REQUIRED BY LABOR LAW § 195(1)

135.     Plaintiffs allege and incorporate by reference all of the foregoing allegations as if set forth fully at length herein.

136.     Pursuant to Labor Law § 195(1), Defendants were obligated to provide Plaintiffs and the Class at the time of their hiring with a notice containing, inter alia, the following information: the employee's rate of pay, allowances to be taken, the regular payday, the name of the employer, any "doing business as" names used by the employer, the physical address of the

18

employer's main office or principal place of business, a mailing address if different, and the telephone number of the employer.

137.    Defendants failed to furnish to Plaintiffs and the Class with such notice.

## **COUNT VII**

### RETALIATION UNDER 29 U.S.C. §§ 215(a)(3) and 216

138.    Plaintiff Vasquez realleges and incorporates by reference all allegations in all preceding paragraphs.

139.    Vasquez engaged in protected activity by filing an action to recover, inter alia, overtime wages.

140.    As detailed in this complaint, the Defendants retaliated against the Plaintiff by denying him the ability to work overtime hours and demanding production of his passport.

141.    Defendants acted with malice.

142.    There is a causal connection between the Plaintiff's protected activity and the Defendants' retaliation.

143.    Due to Defendants' violations of the anti-retaliation provision of the FLSA, Plaintiff Vasquez is entitled to lost wages, liquidated damages, punitive damages, attorneys' fees, and costs of the action.

## **COUNT VIII**

### RETALIATION UNDER NYLL §§ 215 and 198

144.    Plaintiff Vasquez realleges and incorporates by reference all allegations in all preceding paragraphs.

145.    Plaintiff Vasquez engaged in protected activity.

146.    As detailed in this complaint, the Defendants retaliated against the Plaintiff by denying him the ability to work overtime hours and demanding production of his passport.

147.    Defendants acted with malice.

148.    There is a causal connection between the Plaintiff's protected activity and the Defendants' retaliation.

149.    Due to Defendants' violations of the anti-retaliation provision of the NYLL, Plaintiff Vasquez is entitled to recover from Defendants lost wages, liquidated damages, punitive damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

   **WHEREFORE**, Plaintiffs and the members of the Class and Collective pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

   A.  unpaid overtime wages under the FLSA;

   B.  liquidated damages equal to unpaid overtime under the FLSA;

   C.  unpaid overtime under the NYLL;

   D.  liquidated damages equal to unpaid overtime wages under the NYLL;

   E.  liquidated damages equal to the amount of overtime wages not timely paid under the NYLL;

   F.  up to $5,000 for violations of the wage statement provisions of the NYLL;

   G.  up to $5,000 for violations of the hiring notice provisions of the NYLL;

   H.  lost wages, liquidated damages and punitive damages under the anti-retaliaiton provisions of the NYLL and the FLSA,

   I.  reasonable attorneys' fees and costs of the action,

   J.  liquidated damages;

20

K.  prejudgment interest; and

L.  Such other and further relief as this Court may deem just, proper, and equitable.

Dated: Huntington, New York
       August 8, 2022

                                    MOSER LAW FIRM, P.C.


                        By:    _____.
                                    Steven J. Moser, Esq.
                                    *Attorneys for Plaintiffs*
                                    5 East Main Street
                                    Huntington, New York 11743
                                    (516) 671-1150
                                    steven.moser@moserlawfirm.com